NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 17 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SHAWNEE ARNOTT,

Plaintiff-Appellant,

v.

MARTIN O'MALLEY, Commissioner of
the Social Security Administration,

Defendant-Appellee.

No. 23-15814

D.C. No. 3:21-cv-08205-DJH

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Submitted May 14, 2024**
Phoenix, Arizona

Before: DESAI, DE ALBA, Circuit Judges, and CHEN,*** District Judge.

Shawnee Arnott ("Arnott") appeals the district court's order affirming an

administrative law judge's ("ALJ") denial of her application for disability

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Edward M. Chen, United States District Judge for the
Northern District of California, sitting by designation.

insurance benefits ("DIB").  On appeal, Arnott asserts that the ALJ erred on multiple grounds: (1) by improperly applying a presumption of continuing nondisability based on a prior ALJ decision from 2012; (2) by incorrectly reopening findings made in the 2012 ALJ decision related to her past relevant work; (3) by failing, at step five of the sequential evaluation process, to make findings to support her analysis on transferability of work skills; and (4) by improperly rejecting the opinions of two treating physicians and one examining physician.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo a district court's decision to affirm the Social Security Administration's ("SSA") determination.  *See Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).  We will "reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. 'Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*  We affirm the district court.

1.  Based on *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988), and Acquiescence Ruling 97-4(9), a prior adjudication of nondisability creates a presumption of continuing nondisability for the period currently under review, unless the claimant shows that there are "changed circumstances."  The ALJ erred in stating that there were no changed circumstances.  However, the error was

2

harmless. As the district court explained, the ALJ's finding "was inconsequential because it did not end or control her evaluation of Plaintiff's claim." *See, e.g.,* *Plummer v. Berryhill*, 747 Fed. App'x 631, 632 (9th Cir. 2019) (finding ALJ's application of res judicata was harmless because "[t]he ALJ's decision did not rest solely on res judicata; rather, the ALJ also conducted a thorough review of the medical records and testimony to make an independent nondisability finding").

2.      Under *Chavez* and AR 97-4(9), the prior ALJ's findings in the five-step sequential review are given some res judicata consideration unless there is new and material evidence. 844 F.2d at 693–94. The ALJ was entitled to reject the job classifications that the prior ALJ used for Arnott's past relevant work because there was new and material evidence to support different job classifications—specifically, testimony by Arnott and by vocational experts.[1] For example, one of the vocational experts described the duties of an office administrator (one of the job classifications used by the prior ALJ), but Arnott's discussion of her past relevant work did not match that description.[2]

---

[1] We reject Arnott's contention that the ALJ *reopened* the prior ALJ's decision pursuant to 20 C.F.R. § 404.989(a)(1). Reopening the prior decision would be readjudicating the time period considered by the prior ALJ (*i.e.*, October 10, 2010, through September 15, 2012). *See* AR 97-4(9). Here, the ALJ did not reopen the prior ALJ decision but rather considered whether Arnott was disabled for a subsequent time period.

[2] Moreover, it is not clear how Arnott was harmed by the ALJ using different job classifications. The prior ALJ found that Arnott *could* do her past relevant work

3.    The ALJ found that Arnott could not perform her past relevant work and thus evaluated, at step five, whether she was able to do other work considering her residual functional capacity, age, education, and work experience.  The ALJ determined that Arnott "had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy."

Under the applicable regulations, if a claimant is of advanced age and cannot do more than sedentary work (like Arnott here), the SSA will find that the claimant has transferable skills "only if the sedentary work is so similar to [the claimant's] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."  20 C.F.R. § 404.1568(d)(4).  The ALJ's transferability analysis here was consistent with the regulation and supported by substantial evidence.  There was record evidence of the skills involved with Arnott's past relevant administrative and clerical work and their applicability to the proposed alternative work.  The ALJ was entitled to credit the vocational experts' conclusions that Arnott's previous work was so similar to the proposed alternative work that she would need to make

under the job classifications of office administrator and companion and thus found her not disabled at step four.  In contrast, the ALJ here found that Arnott could *not* do her past relevant work under the different job classifications of survey worker, administrative clerk, and home attendant and thus moved on to step five of the sequential review.

minimal vocational adjustments. Contrary to Arnott's contentions, the ALJ did consider her advanced age and the appropriate transferability analysis. The ALJ considered Social Security Ruling 82-41, which specifically notes that, "where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC." Substantial evidence, including Arnott's own testimony, supports the ALJ's finding that Arnott had such universal skills from her past relevant work.

4.      Finally, the ALJ provided specific and legitimate reasons,[3] supported by substantial evidence, for giving little weight to the opinions of Drs. Melde, Briones, and Nguyen.[4] For example, Dr. Melde's assessment of extreme limitations was not supported by clinical or other objective findings, including his own medical notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

[3] Because each doctor's opinions were contradicted by other medical evidence, the stricter standard (clear and convincing reasons) does not apply. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

[4] Since Arnott's claim was submitted to the SSA before March 2017, the rules on evaluating medical opinion evidence that pre-date March 2017 (when the SSA standards were changed) govern the analysis of this argument. See 20 C.F.R. §§ 404.1520c, 404.1527.

2008).

As to Dr. Briones, although a treating physician's opinions may be informative even if the physician provides treatment after the time period in question, *see Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), *superseded on other grounds by* 20 C.F.R. parts 404 & 416, Dr. Briones did not explain the basis for her opinions as to Arnott's condition in 2012 which was well before she treated Arnott. *See* 20 C.F.R. § 404.1527(c)(2)-(3) (noting that factors considered in weighing a medical opinion include the nature of the treatment relationship ("the more knowledge a treating source has about your impairment(s) the more weight we will give") and the supportability of the opinion ("[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion")).

Finally, as to Dr. Nguyen, the doctor's own psychological report recited that Arnott had only mild depressive symptoms, yet Dr. Nguyen opined there were moderate limitations. In addition, prior consultative examining psychologists found no limitations for Arnott in 2011.

**AFFIRMED.**